# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL TRENTLY and AMY TRENTLY<br><br>　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES OF AMERICA, CITY OF SCRANTON and ALAN W. WEITZ,<br><br>　　Defendant. | No. 3:18-CV-00602<br><br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before this Court is a Motion to Dismiss for lack of subject matter jurisdiction filed by Defendant United States of America ("Government") (Doc. 3) and a Motion to Dismiss for failure to state a claim filed by Defendant City of Scranton ("Scranton") (Doc. 6). Because Plaintiffs failed to exhaust their administrative remedies as required under the Federal Tort Claims Act, Plaintiffs' Complaint (Doc. 1-2) will be dismissed in its entirety for lack of subject matter jurisdiction.

## I. Background

The facts as alleged in the Complaint are as follows:

This dispute arises from the events surrounding a vehicle collision on March 16, 2015. Plaintiff Michael Trently was a passenger in a 2014 GMC Terrain Vehicle owned by the City of Scranton ("Scranton") and driven by Robert J. Hegedus ("Hegedus") while performing their duties as participants in the United States Marshal Service's ("USMS") Violent Offender Task Force ("Task Force"). Doc. 1-2 ¶¶ 5-7. Michael Trently, a parole agent employed by the Commonwealth of Pennsylvania, and Hegedus, a City of Scranton Police Officer, were both working with the Task Force at the time. *Id.* at ¶ 5, 6.

The Task Force was attempting to locate and arrest alleged felony fugitive offender, Defendant Alan W. Weitz. *Id.* at ¶ 4. At approximately 1:00 p.m. on March

16, 2015, members of the task force observed Weitz exit a residence located in the 300 Block of South River Street, Wilkes-Barre, Pennsylvania. *Id.* at 8. Upon exiting the house, Weitz ran to a blue Lincoln Navigator and possibly caught a glimpse of the two unmarked Task Force vehicles. *Id.* In an attempt to block Weitz's vehicle in so he could not flee, Hegedus drove "at an angle along the side of and to the front of" Weitz's vehicle, but did not use his lights, siren, or public address system. At some point thereafter, Hegedus's vehicle, in which Michael Trently was a passenger, collided with Weitz's vehicle. *Id.*

Michael Trently alleges, he has suffered significant injuries—some permanent—as a result of the collision including:

> Commuted displaced fracture of the third metatarsal with dorsal displacement of the main distal fracture fragments which required surgery and internal fixation including placement of plates and screws, right hand neuropathy, pain, discomfort, lack of strength, range of motion and dexterity of the right hand, finger, and wrist, cerebral concussion, traumatic brain injury, post-concussion headache, loss of cognitive functioning, vertigo, post traumatic stress disorder, complex regional pain syndrome, thoracic outlet syndrome, headache, dizziness, blurred vision, memory loss, back pain, neck pain, depressed mood, anxiety, cervical disc herniation, chronic pain syndrome, caused or aggravated cervical, thoracic, and lumbar disc disease and radiculopathy, peripheral vestibular dysfunction, central vestibular dysfunction, bilateral shoulder sprain, strain, right elbow pain and discomfort and numbness radiating down right hand and finger, paraspinal muscle spasm, depression adjustment disorder, panic attacks and anxiety disorders and migraines.

*Id.* at ¶ 4. Additionally, Michael Trently alleges he has spent considerable funds on his treatment and expects to continue to do so. *Id.* at ¶¶ 9-11.

On January 25, 2018, Michael Trently and his wife, Amy Trently filed a complaint in the Court of Common Pleas of Lackawanna County against Hegedus, the City of Scranton, and Weitz[1] in connection with these events. *See generally id.* On March 15, 2018, the United States substituted itself for Hegedus as a party, certifying

---

[1] Weitz is captioned as a defendant in the complaint; however, none of the counts of the complaint, which was attached to Document 1 as Exhibit A, include claims against Weitz. (Doc. 1-2)

2

that Hegedus was acting within the scope of his employment for the Task Force, and filed a notice of removal pursuant to 18 U.S.C. § 1442(a)(2). Doc. 1 ¶¶ 2-3, 7; Doc. 1-3 at 2. The Government filed a motion to dismiss the Complaint for lack of subject matter jurisdiction on March 29, 2018. Doc. 3.[2] Shortly thereafter, on April 3, 2018, Scranton filed a motion to dismiss the Complaint for failure to state a claim. Doc. 6. Both Motions have been fully briefed and are ripe for review.

## II. Legal Standards

### A. Motion to Dismiss: Rule 12(b)(1)

"When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction the accompanying defenses become moot and need not be addressed." *Turner v. United States*, Civ. No. 13-494, 2014 WL 1345011, at *2 (M.D.Pa. Apr. 4, 2014)(citations omitted); *see also Tagayun v. Stolzenberg*, 239 F.App'x 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case."). When ruling on a 12(b)(1) motion, "the district court must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." *Fed. Realty Inv. Trust v. Juniper Props. Group*, No. 99-3389, 2000 WL 45996, at *3 (E.D.Pa. Jan. 21, 2000) (citing *Haydo v. Amerikohl Mining, Inc.*, 830 F.2d 494, 496 (3d Cir. 1987)).

---

[2] In their brief in opposition to the Motion to Dismiss, Plaintiffs requested limited discovery to determine the existence of an agreement, known as a Memorandum of Understanding ("MOU"), between the United States government and the City of Scranton concerning Hegedus's employment status as part of the Task Force. On July 20, 2018, I ordered the United States Attorney's Office to provide the Plaintiffs with the MOU or a certification that no such agreement existed. Doc. 18. I also ordered Plaintiffs to submit a status report following their receipt of the MOU or certification of its non-existence. *Id.* Plaintiffs submitted this status report on August 10, 2018. Doc. 19.

3

A court may treat a Rule 12(b)(1) motion either as a facial or a factual challenge to its subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 189 (3d Cir. 2000). When deciding a Rule 12(b)(1) facial attack, the Court may only consider the allegations contained in the complaint and exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and "undisputably authentic" documents which the plaintiff has identified as a basis of his claim and which the defendant has attached as exhibits to his motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1567 (3d Cir. 1995) (noting that where "a complaint relies upon a document, [] the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished"). If the defendant submits and the court considers evidence that controverts the plaintiff's allegations, the court must treat the motion as a factual challenge. *Gould*, 220 F.3d at 178. In such cases, "the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The court is "not confined to the allegations in the complaint." *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), *overruled on other grounds by Animal Sci. Prods. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011). No presumption of truthfulness attaches to the plaintiff's allegations, and the burden of proof is on the plaintiff to show that the court possesses jurisdiction. *Id.* The plaintiff must show this by a preponderance of the evidence. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

### III. Discussion

The Federal Tort Claims Act ("FTCA") contains a limited and conditional waiver of the federal government's sovereign immunity, which provides consent to suit in federal district court under certain conditions. *See United States v. Orleans*, 425

U.S. 807, 813 (1976), *abrogated on other grounds by United States v. Olson*, 546 U.S. 43 (2005); 28 U.S.C. § 1346(b). Before filing a suit against the United States pursuant to the FTCA, a plaintiff must present an administrative claim to the responsible agency "and the claim shall have been finally denied by the agency." *See* 28 U.S.C. § 2675(a). "The final denial requirement is 'jurisdictional and cannot be waived.'" *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (quoting *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971)).

The Government argues Plaintiffs' case should be dismissed for lack of subject matter jurisdiction due to Plaintiffs' failure to exhaust their administrative remedies under the FTCA. The Government asserts the FTCA controls because Hegedus, at the time of the incident, was a covered United States employee under the FTCA. (*See* Doc. 4 *generally*). Specifically, the Government contends that because Hegedus was a covered United States employee under the FTCA at the time of the crash, Plaintiffs' failure to exhaust their administrative remedies mandates dismissal of the lawsuit. *Id.* Plaintiffs counter that Hegedus was not a covered employee at the time of the accident because Scranton was the agency liable for his actions in connection with the Task Force. (*See* Doc. 22 *generally*).

"[P]ersons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation" are considered employees of the federal government under 28 U.S.C. § 2671(1). Additionally, state and local government employees "on detail to a Federal agency" are "deemed [] employee[s] of the agency for purposes of . . . the Federal Tort Claims Act and any other Federal tort liability statute." 5 U.S.C. § 3374(c)(2).

Pursuant to 28 U.S.C. § 2679, the Attorney General may certify "that the defendant was acting within the scope of his office or employment at the time of the incident out of which the claim arose."). The Government's scope certification is subject to judicial review. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 443, 115 S.Ct. 2227 (1993); *Melo v. Hafer*, 912 F.3d 628, 642 (3d Cir. 1990). The scope

5

certification is *prima facie* evidence that the individual's conduct occurred within the scope of employment. *Schrob v. Catterson*, 957 F.2d 929, 936 (3d Cir. 1992). "[A] plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Id.*; *see also Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991) ("[P]laintiff bears the burden of proving that the employee was not acting within the scope of employ, consistent with the purpose § 2679(d) and with the general scheme of the FTCA in which plaintiff bears the burden of proof on this issue."); *Wilson v. Jones*, 902 F. Supp. 673, 678 (E.D.Va. 1995) (Jones, J.) ("[O]nce the United States Attorney issues a scope certificate, the burden shifts to the plaintiff to contest the scope of employment issue and prove by a preponderance of the evidence that the defendant was acting outside the scope of his employment.").

On March 18, 2015, Assistant U.S. Attorney Kate L. Mershimer certified that "Roger J. Hegedus was acting within the scope of his office or employment as a Special Deputy United States Marshal at all relevant times during the events on and around March 16, 2015 . . . as part of the United States Marshal's service Fugitive Task Force for the Middle District of Pennsylvania." (Doc. 1-3 at 2). Rather than challenging whether Hegedus's actions occurred within the scope of his employment, Plaintiffs merely dispute the Government's certification as to whether Hegedus's actions were undertaken as a federal employee.

After limited discovery on this issue, Plaintiffs submit three (3) memoranda of understanding ("MOU") to show Hegedus was not a covered federal employee for liability purposes. (Doc. 22 at 9-21). Specifically, Plaintiffs highlight the release of liability provision in all three MOUs to show that Scranton retained liability Hegedus's "actions or omissions". (*Id.* at 3, 12, 17, 21). While Plaintiffs assert that "[t]he United States Government, by way of the U.S. Marshall Service, the Commonwealth of Pennsylvania and City of Scranton have entered into 'Memorandums of Understanding' relative to each entities [*sic*] participation, jurisdiction and powers relative to the Task Force[,]" none of the MOUs list Scranton as a party to the

agreement. (*Id.* at 2). Indeed, all three (3) MOUs are between the Pennsylvania Board of Probation and Parole and the USMS. (*Id.* at 9, 13, 14, 17, 18, 21). Plaintiffs have not provided any further evidence or explanation to suggest that an MOU exists between Scranton and the USMS or, if such an MOU exists, it contains a parallel release of liability provision. Accordingly, Plaintiffs have not met their burden of rebutting the prima facie evidence from the scope certification that Hegedus was a federal employee at the time of the incident on May 16, 2015.

Even if the MOUs included Scranton as a party, the remaining provisions in the MOUs undermine Plaintiffs' argument that the release of liability provision sufficiently rebuts the scope certification. For example, the MOUs explicitly state that non-USMS officers on the task force will be deputized as "Special Deputy U.S. Marshals" whose work will be supervised by the USMS District Chief Deputy. (*Id.* at 10, 15, 19). In his declaration, Gerald M. Auerbach, General Counsel for the USMS, explains that the language in each of the release of liability provisions "was not designed to control whether the United States was liable under the FTCA[,]" but was instead "included to provide for contractual indemnity" as to "who would ultimately pay for the liability" for tortious act by members of the Task Force. (Doc. 23-1 ¶ 7).

Of the courts that have had the opportunity to review whether Special Deputies employed by state and local agencies who serve on multi-jurisdictional task forces, "[m]ost . . . categorize Special Deputies as federal actors." *Love v. Mosley*, 2015 WL 5749417 at \*6 (M.D. Mich. March 30, 2015) (Brenneman, J); *see also Pettiford v. City of Greensboro*, 556 F. Supp. 2d 513, 534-35 (M.D.N.C. 2008) ("Cross-deputized local law enforcement officers enjoy certain immunities and protections of federal officers acting under color of law. Of particular relevance to this action, section 3374(c)(2)[. . . .]"). Auerbach's declaration, the language of the non-liability provisions in the MOUs, and statutory and case law all undermine Plaintiffs' assertion that the release of liability provision waives the federal government's statutorily-defined FTCA liability, which is itself a waiver of the federal government's sovereign immunity.

7

Plaintiffs have not satisfied their burden of presenting specific facts that rebut the Government's scope certification. As such, I find that Hegedus was a covered federal employee at the time of the incident on May 16, 2015, that the FTCA therefore applies, and that the Complaint must be dismissed for lack of jurisdiction due to Plaintiffs' failure to exhaust their administrative remedies.

Because the entire Complaint will be dismissed pursuant to the Government's 12(b)(1) Motion to Dismiss, I need not consider Scranton's arguments raised in the 12(b)(6) Motion to Dismiss.[3]

### IV. Conclusion

For the above-stated reasons, Plaintiffs' Complaint will be dismissed in its entirety without prejudice for lack of subject matter jurisdiction.

An appropriate order follows.

November 15, 2018  /s/ A. Richard Caputo
Date   A. Richard Caputo
   United States District Judge

---

[3] It is possible that Trently could qualify for relief under the Federal Employee Compensation Act ("FECA") in light of 5 U.S.C. § 3374(d), which provides that "[a] State or local government employee who is give nan appointment in a Federal agency for the period of the assignment or who is on detail to a Federal agency and who suffers disability . . . sustained while in the performance of his duty during the assignment shall be treated, for the purpose of subchapter I of chapter 81 of this title, as though he were an employee as defined by section 8101[.]"